## LIABILITY OF PROPERTY FOR DEBTS.

Common Pleas Court of Hamilton County.

MARY WALSTON v. MARGARET McCABE ET AL.

Decided, January 9, 1911.

*Conveyance—By Father to Daughter Not in Trust for Father, When—*
*But Must be Regarded as Transferred in Fraud of Creditors, When.*

1. A statement by a business man at the time of making a conveyance of property to his daughter, to the effect that the business in which he was engaged was subject to fluctuations and he desired to put the title to this property in such shape that it would afford a home for himself and his children in case anything unfavorable happened to him in his business, is not inconsistent with the theory that the conveyance was to the daughter absolutely, and not to her in trust for himself.

2. But where it appears that at the time of the conveyance he was in an insolvent condition, and indebtedness existing at that time remained unpaid at the time of his death, the conveyance to the daughter must be regarded as in fraud of such pre-existing creditors.

*Charles W. Baker*, for plaintiff.
*A. L. Herrlinger, Denis F. Cash* and *E. T. Dixon*, contra.

SWING, J.

On May 13th, 1905, John M. McCabe, deceased, purchased the house and lot in the petition described, having the deed made to his daughter, Mary McCabe, now Mrs. Mary Walston, the plaintiff in this case. Afterward on December 11th, 1907, during the last illness of John M. McCabe, shortly before his death and at a time when the proof shows he was *non compos*, the said Mary Walston, without receiving any consideration for doing so, executed a deed together with her husband, Harry F. Walston, for the said property to her father, the said John M. McCabe. It is alleged in the petition that she was induced to make the conveyance by the untrue representation that it was her father's request and that it was necessary for her to do so,

and that those interested would continue to call upon her until she should sign said deed conveying the property to her father. Also, the untrue representation that it was necessary that she should do so to save the property of her father. It is alleged that the plaintiff relied upon said representations and was coerced by them as by threats; that the property was her own, and she asks that the conveyance to her father be canceled and that she be decreed to be the owner of the title of the property, etc.

It is clearly shown by the evidence that John M. McCabe bought the property, making a cash payment upon it of about $————, taking it subject to a mortgage, and that he had the title made to his daughter, the plaintiff. It is claimed by the defendant, Margaret McCabe, as executrix and trustee of the estate of John M. McCabe, deceased, that the said John M. McCabe placed the title in the name of his daughter to be held in trust for him. It is contended by the plaintiff that the property was intended to be hers, to be absolutely free from any trust. It is also claimed and denied that McCabe was insolvent at the time of the purchase.

Certain statements made by John M. McCabe at the time of the purchase have been given in evidence by Mr. Herrlinger, the lawyer who drew the deed, which it is claimed by the defendant show that he intended the conveyance to be in trust. The statements as testified to are as follows: Mr. Herrlinger testified, "He said to me, 'Do you know, Mr. Herrlinger, the hide business is an uncertain business, the market fluctuates a great deal, and I want you to draw this deed to my daughter, Mary, so that in case anything happens to me in my business there will be a home for myself and my children.'"

Mr. Herrlinger also testified, Mr. McCabe said, "Now I don't want to keep the property in my name if it has any mortgage upon it, because it will affect my credit with the mercantile agencies." And Mr. Herrlinger said this piece had a mortgage upon it.

This is the testimony as to certain statements made by McCabe at the time of the placing of the title in his daughter's name, as to the nature of the conveyance.

As to the law of the case, so far as the question of intention at the time of the conveyance is concerned, it is stated in *Perry on Trusts*, Volume 1, Section 147, as follows:

"Whether a purchase in the name of the wife or child is an advancement or not is a question of pure intention, and it is presumed in the first instance to be a provision or settlement; therefore any antecedent circumstance, contemporaneous acts or facts may be received, either to rebut or support the presumption; any acts or facts, so immediately after the purchase as to be fairly considered a part of the transaction, may be received for the same purpose. So declarations of the real purchaser, either before or at the time of the purchase, may be received to show either that he intended it as an advancement or a trust. Such declarations are received, not as declarations of a trust by parol or otherwise, but as evidence showing what his intention was at the time; they are parts of the transaction or words accompanying the act."

In the same section there are statements as to declarations made by the husband or father after the purchase, and declarations which may be used against him, but not in his favor. Following these there is this statement:

"But the declarations must be direct and certain, and where possible should be corroborated by other facts and circumstances; for courts will not act upon mere declarations, if they are conflicting, vague or inconsistent with themselves."

Having in mind the rule of law as stated, I am of opinion that the declaration of John M. McCabe to Mr. Herrlinger does not show an intention upon his part to place the title in the name of his child in trust for him, with sufficient clearness to warrant me in holding that that was his intention. I think the statement is quite consistent, with the presumption raised by the fact of the conveyance itself, that he intended to give the property to his daughter, he knowing that he was largely indebted at the time, and with the idea that if his daughter had that house and lot and he should meet with disaster in his business, he would have, as he said, with her "a home for myself and children."

But there is a more serious question in the case. It is claimed by the defendant that John M. McCabe was at the time of the

purchase of the property in fact insolvent, and that being so, the conveyance to the child was invalid of any property paid for by him. The law upon this subject is stated in *Perry on Trusts,* Volume 1, Section 149 as follows:

"If the purchaser and payer of the money takes the conveyance in the name of a wife or child for the purpose of delaying, hindering and defrauding his creditors, the conveyance is void, and a trust results which the creditors can enforce to the extent of their debts. It makes no difference by the better opinion that the intent was not fraudulent. A man must be just before he is generous, and if the property given to the wife was paid for with funds that should have gone to the creditors, the property is liable to them. * * * If the parent or husband was not indebted at the time, subsequent creditors could not defeat the title nor enforce a trust unless the settlement or conveyance was made for the purpose of afterwards running in debt and defrauding creditors."

The defendant at the trial called Charles Weber, a real estate man, who testified to the value of the property of John M. McCabe in May, 1905, at the time of the conveyance to the plaintiff and ever since; and also offered evidence to show the amount of indebtedness at that time and ever since. The evidence of the indebtedness, and the testimony of Weber as to the value, show that in May, 1905, McCabe's property was worth $20,000 and that his debts amounted to $26,000; and that at the time of his death April, 1908, his assets were $22,700 and his liabilities were $33,100. The value of the property and. the liabilities increased a little and in near the same proportions from May, 1905, to April, 1908.

It is apparent that at the time of the conveyance in May, 1905, McCabe knew that he was heavily indebted as compared with the value of his property. It is not clear that he knew at that time that he was insolvent; I think it is quite likely that he may have regarded himself as solvent. I do not think at any time he had any intention of defrauding creditors; but, as stated by *Perry on Trusts,* above, "it makes no difference by the better opinion that the *intent* was not fraudulent."

Substantially in accord with the statement of the law in *Perry on Trusts* is the statement of it as held by our Supreme

Court and other courts of this state, as set forth in 6 Encyc. O. Digest, pp. 808-9, which with the citations I will set forth here, believing the statements of the law in the text to be a correct summary of what is held in the numerous cases cited:

"A debtor may, as a general rule, make valid gift or transfer of his property without consideration, and such alienation will be upheld as to existing creditors. If, however, the transfer is made to the prejudice of the rights and interests of his existing creditors, as for instance, where the debtor is insolvent, it will be void to the extent that existing creditors are injured, although valid as to subsequent creditors, where there was no intent to defraud future creditors. *The validity of the transfer as to existing creditors, is not dependent on the intent to defraud them.* Prejudice resulting to their interests by the voluntary disposition of the debtor's property, out of which they are entitled to make their claims, constitutes sufficient grounds to render the transfer invalid as to them. Under such circumstances it is essential to the validity of the transfer *that the debtor has sufficient property remaining to satisfy subsisting debts.* Bowlus v. Shanabarger, 19 O. C. C., 137; Crumbaugh v. Kugler, 3 Ohio St., 374; s. c., 3 Ohio St., 544; Boies v. Johnson, 1 C.C.(N.S.), 451; Kennedy v. Dodge, 19 O. C. C., 425; National Bank v. Scott, 13 O. D. N. P., 601; Webb v. Roff, 9 Ohio St., 1; Oliver v. Moore, 23 Ohio St., 473; Evans v. Lewis, 30 Ohio St., 11; Robinson v. Von Dolcke, 1 N. P., 429; Brice v. Myers, 5 O., 122; Burgett v. Burgett, 1 O., 482; Miller v. Wilson, 15 O., 114; Tremper v. Barton, 18 O., 423; Bank of U. S. v. Ennis, Wright, 605; Humbert v. Methodist Church, Wright, 213; Stephenson v. Donahue, 40 Ohio St., 184, affirming 8 Am. L.; Hays v. Moore, 5 N. P., 220."

"A man largely indebted can not make a gift of his property without the most careful regard to the rights of his creditors. Crumbaugh v. Kugler, 2 Ohio St., 378."

"A person is trusted or obtains credit in proportion to the property he appears to own; the creditor, when he trusts him, looks to his possession as evidence to his ability to pay, and as a fund from which, if other resources of the debtor fail, he is to receive his demand. After the credit is obtained for the debtor to divest himself of his property by giving away, thereby rendering himself unable to pay his debt, or to perform his contract, is unjust; it is a fraud upon the creditor. Whether, by making the gift, the debtor intended to prevent

the payment of the debt or not, can make no difference as to the rights of the creditor; his injury is the same. It is the duty of the debtor to retain *at least a sufficiency of his property to pay all his debts,* and perform all of his contracts; if he does not, justice requires that the property should be followed into the hands of the donee by the creditor. *Brice* v. *Myers,* 5 O., 122; *6 Encyc. Digest,* 808.''

''A person largely indebted can not give away his property without amply providing for the payment of his debts. The suspicion of a fraudulent intention in making such a gift may, in many such cases, be removed by proper evidence, but the question always remains whether the conveyance operated to the prejudice of the creditors. *Such a gift is never upheld unless property clearly and beyond doubt is retained sufficient to pay all the donor's debts. Crumbaugh* v. *Kugler,* 2 Ohio St., 374; *6 Encyc. Digest,* 808 and 809.''

''A voluntary conveyance by wife to her husband, without consideration, which operates to defraud creditors, must, without respect to the intention of the parties, be set aside. *Kennedy* v. *Dodge,* 19 O. C. C., 425; *6 Encyc. Digest,* 809.''

''The validity of a conveyance is determined by the circumstances of the grantor at the time it is made and a transfer by a solvent grantor will not be rendered fraudulent by his subsequent insolvency. *National Bank* v. *Scott,* 13 O. D. N. P., 601; *Creed* v. *Lancaster Bank,* 1 Ohio St., 1; *6 Encyc. Digest,* 809.''

''It is only because that being in debt a debtor is bound in good faith to have a regard, in the disposition of his property, to the joint claim of his creditors—to regard the obligation which he has incurred them that any objection can be made to a voluntary conveyance by such debtor where the conveyance is made without any fraudulent intent or secret trust. This principle does not apply at all to subsequent creditors; they give credit to their debtor as he is, for what he has, not for what he once had. In order to render such a transfer invalid as to subsequent creditors a present intention to defraud future creditors must be shown to have existed in the mind of the donor at the time of the conveyance. *Creed* v. *Lancaster Bank,* 1 Ohio St., 1; *Crumbaugh* v. *Kugler,* 2 Ohio St., 374; *Bank of U. S.* v. *Ennis,* Wright, 605; *Webb* v. *Roff,* 9 Ohio St., 430; *Oliver* v. *Moore,* 23 Ohio St., 473; *Evans* v. *Lewis,* 30 Ohio St., 11; *Robinson* v. *Von Dolcke,* 1 N. P., 429; *Hedrick* v. *Gregg,* 8 N. P., 24; *Bowlus* v. *Shanabarger,* 19 O. C. C., 137. See the title Assignments

for the Benefit of Creditors, Volume 2, page 1; *6 Encyc. Digest,* 810.''

From all the foregoing statements I gather that such a conveyance as was made in this case to the daughter of John M. McCabe, would be invalid as to existing creditors if he was at the time insolvent, *i. e.,* did not have *"sufficient property remaining to satisfy subsisting debts,"* did not *"retain at least a sufficiency of his property to pay all his debts* and perform all his contracts"—*"properly clearly and beyond doubt sufficient."*

No argument was made to me as to existing and subsequent creditors, so far as I recall; but, as I remember, the testimony showed that a large part of the indebtedness of McCabe at the time of the purchase of the property continued virtually unsatisfied at the time of his death, being in large part bank indebtedness renewed from time to time.

If I am correct in my understanding as to the existing indebtedness at the time of the purchase being still unpaid, it would follow that the conveyance to the daughter was invalid as to such creditors, and would have been set aside in an action for that purpose, and it must also follow that the re-conveyance made by the daughter would not be invalid.

I do not think Miss Margaret McCabe made false and fraudulent statements to induce the re-conveyance, though being a large creditor she doubtless sought to have the re-conveyance made and insisted upon it; but that she had the right to do. I decline to set the re-conveyance aside, wholly upon the ground of the insolvency of McCabe at the time of the purchase of the property, and upon my understanding, that much of the then existing indebtedness is still unsatisfied.